IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND

                                          :
WASHINGTON METROPOLITAN AREA
 TRANSIT AUTHORITY                        :

         v.                               : Civil Action No. DKC 2006-3412

                                          :
AMALGAMATED TRANSIT UNION,
 LOCAL 689, AFL-CIO                       :

**MEMORANDUM OPINION**

Presently pending and ready for resolution are (1) the petition of Washington Metropolitan Area Transit Authority ("WMATA") to vacate the arbitration award (paper 1); (2) WMATA's motion to stay the enforcement of the arbitration award pending resolution of the petition to vacate (paper 2); (3) the application of Amalgamated Transit Union, Local 689, AFL-CIO ("the Union") to confirm the arbitration award (paper 5); (4) the Union's motion for an extension of time to file a response (paper 11); and (5) WMATA's motion to strike the Union's reply (paper 13).  The issues are fully briefed and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the reasons that follow, WMATA's petition to vacate will be denied, the Union's application to confirm and its motion for extension of time will be granted, and the remaining motions will be denied as moot.

**I.  Background**

The following facts are uncontroverted.  (Paper 1, at 3-5 & paper 5, at 2-3).

This is an action to vacate an arbitration award that was issued on September 25, 2006.  WMATA and the Union are parties to a collective bargaining agreement ("CBA") executed on July 10, 2006, which covers the period from May 1, 2004 through June 30, 2008.  Arbitrator Homer C. La Rue ("Arbitrator") found that WMATA violated the CBA when it terminated Marlon Fells ("Grievant") following an accident on October 1, 2005, that resulted in the death of a member of Grievant's crew.

At the time of the incident, Grievant worked as a Supervisor, Track and Way, in the Office of Track and Structural/Systems Maintenance.  Grievant previously worked in an hourly-rated position that had been included in the bargaining unit covered by the CBA.

On October 1, 2005, Grievant was supervising a crew working on the tracks in the vicinity of the Braddock Road Metro Station in Alexandria, Virginia, when a member of his crew was struck by a revenue train.  The injured crew member subsequently died.  An investigation determined that the accident occurred because Grievant and his crew violated a number of safety rules.  WMATA decided to terminate Grievant and sent a notice of termination on November 18, 2005.

Grievant filed a grievance challenging his termination on November 30, 2005, claiming that WMATA violated Section 109(c) of the CBA when it fired him without offering him the opportunity to retreat to an hourly-rated position.

> Sec. 109 - Seniority - General
> . . .
> (c) Employees who were or will hereafter be promoted or transferred to any position not included in the bargaining unit, shall have their seniority frozen on the date of promotion or transfer except that employees may continue to accumulate seniority in the district from which the employee was promoted or transferred for as long as the employee continues to pay required dues and assessments to the Union.  If said employee should no longer qualify for such position or if such position is abolished, the employee shall be transferred back to the employee's former classification with accumulated seniority, unless the employee is dismissed from the service of the Authority for a cause which would have justified the employee's dismissal from the employee's former classification as an hourly-rated employee.  Disputes arising out of the application of this section shall be handled through the grievance machinery as provided herein and shall be limited to the question of such employee's rights as specified in this Agreement with respect to the employee's former classification only, it being understood that such an employee's claim of rights to that supervisory position as such is not covered by the grievance machinery in this Agreement. . . .

(Paper 1, Ex. B, CBA at 13-14).

Grievant also claimed that WMATA violated the CBA because it did not terminate him within the twenty-day time limitation imposed

by Section 104(d) for disciplinary actions taken against members of the bargaining unit.

> Sec. 104 - Discipline and Grievance Procedure
> . . .
> (d) An employee will not be discharged, suspended, or otherwise disciplined, nor will entries be made against the employee's service record without sufficient cause. . . . In each case in which the Authority disciplines an employee or makes entries in the employee's service record, the employee will be given a written statement within three (3) office working days of the precise charges against the employee and the facts or alleged facts upon which the charges are based, and a copy thereof simultaneously furnished to the Union. After the completion of its investigation, the Authority shall give written notice to the employee and the Union of its decision, whether to exonerate, to discipline or to make other entries in the employee's record, and if the decision is to discipline, such discipline shall be stated in the notice. Such notice shall be sent not later than twenty (20) office working days from the date the employee's superintendent/manager (or designee) first obtained knowledge of the incident or act which forms the basis of the charge or charges. . . .

(Paper 1, Ex. B, CBA at 6-7).

WMATA denied the grievance, arguing that because Grievant was a supervisor at the time of the discipline, he was not protected by the time limitations for disciplining bargaining unit employees under Section 104(d). WMATA further argued that the safety violations committed by Grievant on the day of the accident were so severe that he would have been discharged regardless of whether he was a supervisor or a bargaining unit employee, preventing him from

4

relying on Section 109(c).  WMATA continued to deny the grievance throughout the grievance process, and the dispute was ultimately referred to arbitration.  A hearing before the Board of Arbitration was held on April 21, May 16, and May 22, 2006.

The Arbitrator identified the issue for arbitration: "Whether Marlon Fells should be transferred to his former classification under Section 109 of the Collective Bargaining Agreement with his accumulated seniority, and if so, what shall the retroactive remedy be?"  (Paper 1, Ex. A, Opinion & Award, at 2 ("Opinion & Award")).  The Arbitrator found that WMATA had the unfettered right to remove Grievant from his supervisory position, but when WMATA simultaneously denied Grievant the right to return to his hourly-rated employment, it terminated his employment, triggering his rights under 104(d).  (*Id*. at 9-11).  The Arbitrator decided that WMATA's failure to give Grievant timely notice of its intent to discharge him, as required by 104(d), violated his due process rights and nullified his termination.  The Arbitrator decided that the appropriate remedy was for Grievant to be transferred to his former classification under Section 109(c) of the CBA with accumulated seniority, and to be given back pay, benefits, and seniority retroactive to the date of his discharge.  (*Id*. at 17).

On December 22, 2006, WMATA filed the instant petition to vacate the arbitration award and a motion to stay the enforcement of the arbitration award, pending resolution of the petition to

5

vacate. (Papers 1 & 2). WMATA argues that the arbitration award should be vacated because (1) it fails to draw its essence from the contract, and (2) it violates the public policy of promoting safety in public transportation. (Paper 1, at 5-6). The Union filed an untimely response, together with an application to confirm the arbitration award. (Paper 5). Also presently pending are the Union's motion for an extension of time (paper 11) and WMATA's motion to strike the Union's reply (paper 13).[1]

## II. Standard of Review

Judicial review of arbitral awards in the collective bargaining context is "among the narrowest known to the law." *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978) (internal quotations omitted). The court is not entitled to decide the merits of the dispute. Rather, "if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) (internal quotations omitted). Nor is the court permitted

---

[1] The Union's motion for extension of time will be granted. WMATA has responded to the Union's untimely response and the case will be decided on the merits. *See Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006)(recognizing "the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."). On the other hand, the court need not, and will not, consider the Union's surreply in deciding this case. Thus WMATA's motion to strike will be denied as moot.

to second-guess factual determinations. "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 39 (1987)). The rationale behind this deference to the arbitrator is that it is the arbitrator's interpretation of the facts and the agreement that the parties bargained for, so it is the arbitrator's ruling that the parties should get, so long as the arbitrator "did his job." *See Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir.), *cert. denied*, 519 U.S. 822 (1996); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960).

The only circumstance in which the court may vacate an arbitral award on the merits is "when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'" *Garvey*, 532 U.S. at 509 (quoting *Enterprise Wheel*, 363 U.S. at 597 (alterations in original)). A court "may vacate an arbitrator's award only if it 'violates clearly established public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the arbitrator's personal notions of right and wrong.'" *Yuasa, Inc. v. Int'l Union of Electronic, Elec., Salaried, Mach. &*

*Furniture Workers*, 224 F.3d 316, 321 (4th Cir. 2000) (quoting *Champion Int'l Corp. v. United Paperworkers Int'l Union*, 168 F.3d 725, 729 (4th Cir. 1999)).  The central consideration in determining whether the award "drew its essence" from the contract is the text of the agreement.  *See Mountaineer Gas*, 76 F.3d at 608.  The Fourth Circuit recently summarized the perspective as follows:

> Put simply, an arbitrator's legal determination "may only be overturned where it is in manifest disregard of the law," and an arbitrator's interpretation of a contract must be upheld so long as it "draws its essence from the agreement." *Upshur Coals Corp. v. United Mine Workers, Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991) (internal quotation marks omitted).  Under our precedent, a manifest disregard of the law is established only where the "arbitrator [] understand[s] and correctly state[s] the law, but proceed[s] to disregard the same." *Id*. (internal quotation marks omitted).  Moreover, an arbitration award does not fail to draw its essence from the agreement merely because a court concludes that an arbitrator has "misread the contract." *Id*. (internal quotation marks omitted).  An arbitration award fails to draw its essence from the agreement only when the result is not "rationally inferable from the contract." *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 n.5 (4th Cir. 1998).

*Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir.), *cert. denied*, 127 S.Ct. 434 (2006) (alterations in original).

**III. Analysis**

    **A. Failure to Draw Essence From CBA**

WMATA argues that the award should be vacated because it fails to draw its essence from the CBA. In determining whether an arbitration award draws its essence from the collective bargaining agreement, and whether the arbitrator acted within the scope of his authority under that agreement, the court examines:

> (1) the arbitrator's role as defined by the [CBA]; (2) whether the award ignored the plain language of the [CBA]; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the [CBA's] proscribed limits.

*Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*, 232 F.3d 383, 388 (4th Cir. 2000) (citing *Mountaineer Gas*, 76 F.3d at 608). WMATA does not allege that the first and third elements apply here.

WMATA argues instead that the award should be vacated on the second ground because the Arbitrator ignored the plain language of the CBA when he applied Section 104(d) to Grievant, who was a supervisor, not an employee, at the time.

The Arbitrator found that "retreat rights" existed under 109(c), based on the following: "[i]f said employee should no longer qualify for such position or if such position is abolished, the employee <u>shall be transferred back to the employee's former classification</u> with accumulated seniority, unless the employee is dismissed from the service of the Authority for a cause which would

9

have justified the employee's dismissal from the employee's former classification as an hourly-rated employee."  (Paper 1, Ex. B, CBA at 13) (emphasis added).  Under the Arbitrator's interpretation of the CBA, the clause, ". . . unless the employee is dismissed from the service of the Authority for a cause which would have justified the employee's dismissal from the employee's former classification as an hourly-rated employee[,]" contemplates an individual whose existing retreat rights have been suspended because he was dismissed for a cause which would have justified his dismissal from his former classification.  WMATA argues that this clause can only contemplate an individual for whom retreat rights never existed. (Paper 1, at 16-17).  In other words, under WMATA's framework, an individual's retreat rights never attach if he is dismissed for a cause which would have justified his dismissal from his former classification.

These are two, very different, interpretations of Section 109(c) of the CBA.  Under the highly deferential standard this court must use in reviewing arbitral awards, an award does not fail to draw its essence from the agreement merely because a court concludes that an arbitrator has "misread the contract." *Upshur Coals*, 933 F.2d at 229.  "An arbitration award fails to draw its essence from the agreement only when the result is not 'rationally inferable from the contract.'"  *Patten*, 441 F.3d at 235.

10

Section 109(c) applies to "[e]mployees who were or will hereafter be promoted or transferred to any position not included in the bargaining unit[.]" (Paper 1, Ex. B, CBA at 13). Prior to his role as a supervisor, Grievant was an hourly-rated employee. As an hourly-rated employee, it is uncontested that he was covered by the CBA.

The Arbitrator decided that Grievant was within the group of individuals contemplated by Section 109(c), and thus had retreat rights:

> The problem in the instant matter, however, is that [WMATA] attempted to extinguish Grievant's right to retreat to his bargaining unit position at the same time that it removed him from his supervisory position. Clearly [WMATA] had the unfettered right to remove Grievant as a supervisor unrestricted by any language in the CBA. This Board might agree with [WMATA] that Grievant's Section 109(c) retreat rights would not attach until after [WMATA] made its decision to remove Grievant as a supervisor. . . . This argument for the seriatim attachment of rights, however, is not the approach taken by [WMATA] in its letter of November 18th which removes Grievant as a supervisor and terminates his employment in one action. That letter does more than remove Grievant as supervisor, it also discharges Grievant from his employment with [WMATA]. The November 18th letter, therefore, purports to extinguish Grievant's rights under Section 109(c). . . .

(Opinion & Award, at 10).

Section 109(c) further provides that "[d]isputes arising out of the application of this section shall be handled through the grievance machinery as provided herein and shall be limited to the

11

question of such employee's rights as specified in this Agreement with respect to the employee's former classification only, it being understood that such an employee's claim of rights to that supervisory position as such is not covered by the grievance machinery in this Agreement. . . ." (Paper 1, Ex. B, CBA at 13-14). It was thus reasonable for the Arbitrator to decide that if Section 109(c) applied to Grievant, then so must Section 104(d) – which outlines the grievance machinery. WMATA itself admitted that Section 109(c) refers to the grievance machinery disputes regarding "the employee's right to retreat to his or her former classification." (Paper 1, at 17). Under the Arbitrator's interpretation of the CBA, Grievant had retreat rights which were extinguished by the November 18th letter. Accepting this interpretation, then, Grievant's right to retreat should have been governed by the grievance machinery outlined in Section 104(d).

As noted above, awards that are based on a misapplication of principles of contract interpretation, or even an erroneous interpretation, are not to be vacated. This arbitration award does not fail to draw its essence from the CBA nor did the Arbitrator ignore the plain language of the CBA.

**B.  Violation of Public Policy**

"[A] court may not enforce a collective-bargaining agreement that is contrary to public policy. . . . [A] court's refusal to enforce an arbitrator's interpretation of such contracts is limited

12

to situations where the contract, as interpreted, would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Misco, Inc.*, 484 U.S. at 43 (internal quotation marks and citations omitted).

WMATA argues that the arbitration award should be vacated because it violates the well-settled and prevailing public policy of promoting safety in public transportation because, if left in place, WMATA will be unduly restricted in its ability to discipline supervisors who commit serious safety violations whenever the supervisor in question happens to have been a member of a bargaining unit at one time. (Paper 1, at 6).

This argument is not persuasive. The arbitration award does not unduly restrict WMATA's ability to discipline its supervisors. The award merely indicates that, should WMATA decide to discharge entirely a supervisor who was formerly an hourly rated employee, it should do so within the time limit it and the Union bargained for in the CBA. WMATA permanently discharged Grievant 30 days after it became aware of his transgression. To require WMATA to take this action within 20 days, as dictated by the CBA, is not unduly restrictive. The arbitration award does not violate public policy.

**III.  Conclusion**

The arbitration award does not fail to draw its essence from the CBA, nor would enforcement of the award contravene established public policy.  Accordingly, WMATA's petition to vacate the award (paper 1) will be denied and the Union's application to confirm the award (paper 5) will be granted.  The other motions will be resolved as stated in this opinion.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

14